Decatur Lumber & Manufacturing Company, Complainant, v. Ed. S. Crail et al., Defendants.
Corn Belt Building & Loan Association, Appellant, v. Ed. S. Crail et al., Defendants.

Gen. No. 8,527.

Opinion

filed November 4, 1931.   Rehearing denied January 7, 1932.

COTTON & NICHOLS, for appellant.

WEBBER & WEBBER, for appellees.

Mr. Justice Shurtleff delivered the opinion of the court.

This suit arises out of a bill to foreclose a mechanic's lien filed on January 2, 1930, by Decatur Lumber & Manufacturing Company against one Ed. S. Crail et al., and a cross-bill to foreclose a mortgage filed in the same suit by Corn Belt Building & Loan Association, appellant. Various parties were made defendants to the original bill and to the cross-bill, but the only persons interested in this appeal, besides the original complainant and the cross complainant, are Morehouse & Wells Company, M. S. Clesson and M. W. Iles. The claims of Decatur Lumber & Manufacturing Company, Morehouse & Wells Company and M. S. Clesson are based upon claims for mechanic's lien against real estate in the City of Decatur, owned by one Ed. S. Crail. The claim of Corn Belt Building & Loan Association is based upon a mortgage on the same real estate; and the claim of M. W. Iles is based upon a tax sale certificate, covering the same real estate, issued in June, 1929.

All parties filed answers to the original bill and cross-bill, setting up their respective claims.

Divers other parties besides the above named were made defendants to both the original bill and the cross-bill, but having perfected no appeal, all were precluded by the decree of the court below.

As between the cross complainants, Corn Belt Building & Loan Association, and the various mechanic's lien claimants, there is no dispute as to the validity of the claims of the said mechanic's lien claimants, nor as to the amounts due on the same, nor is there any dispute as to the validity of the mortgage of the cross complainant. The sole question between these parties, Corn Belt Building & Loan Association, Decatur Lumber & Manufacturing Company, Morehouse & Wells Company and M. S. Clesson, is one of priorities. The

claim of the appellee M. W. Iles is disputed by the appellant, Corn Belt Building & Loan Association, not only on the grounds of priority but appellant denies that the appellee M. W. Iles has any claim whatever against the real estate in question. Therefore, there are two issues to be tried in this case. First, the question of priorities between the Corn Belt Building & Loan Association and the various mechanic's lien claimants; and, second, the issue between the Corn Belt Building & Loan Association and the appellee M. W. Iles on a tax sale certificate. The facts concerning these two matters will be taken up separately.

In June, 1929, Ed. S. Crail was the owner of the real estate which is being foreclosed in this case, located on West Wood street in Decatur, Illinois, which real estate was subject to a mortgage to the Corn Belt Building & Loan Association in the sum of $6,000. Crail at that time decided to remodel the house located on said premises and entered into a written contract with H. Logan and Son, of Decatur, Illinois, to remodel said house. The contract covered everything on the remodeling job except the heating plant, which was a separate contract between Ed. S. Crail and the appellee Marion S. Clesson. Logan and Son purchased material from the Decatur Lumber & Manufacturing Company to the extent of $2,794.53, and from Morehouse & Wells Company to the extent of $1,344.50, all of which was used in remodeling the house. Labor and materials were furnished by various other parties but these items have all been paid or otherwise disposed of and do not concern this appeal.

In order to finance the transaction, Crail, through the agency of Fred J. Pierce, a loan broker of Decatur, made an application to the Corn Belt Building & Loan Association, a corporation, of Tuscola, Illinois, for a loan of $10,500. This represented an increase over his old loan of $4,500. Subsequently it developed that this

amount would not be sufficient to pay the bills on the remodeling job so the application was increased from $10,500 to $12,500, and the Corn Belt Building & Loan Association agreed to make a new loan on the property in question for $12,500. After the building was completed, a meeting was held in the office of the Corn Belt Building & Loan Association, Tuscola, Illinois, at which there were present Earl Logan, one of the partners of H. Logan & Son, contractor on the job, Fred J. Pierce, Mr. and Mrs. Crail and certain officers of the Corn Belt Building & Loan Association. At said meeting Logan, the contractor, and Crail, the owner, signed affidavits setting forth the names of all persons who had unpaid bills for material and labor furnished on the Crail job, together with the amount due each person. Checks were thereupon prepared for the various bills as the same appeared on the affidavits furnished by the owner and the contractor, and it appeared that after deducting some $6,000 which was required to pay off the old loan, the new loan of $12,500 was not sufficient to pay all of the bills. Claims which remained unpaid, after the loan funds had been practically exhausted, were as follows: Decatur Lumber & Manufacturing Company, $2,794.53; Morehouse & Wells Company, $872.73; M. S. Clesson, $1,578. Crail, in order to meet these items, thereupon produced two checks drawn upon the Plymouth Casualty Insurance Company, of which company Crail was president. One of these checks was payable to the Decatur Lumber & Manufacturing Company, and the other to Morehouse and Wells Company, but the amounts were blank. Crail then proceeded to fill in the necessary sums to pay the accounts of Decatur Lumber & Manufacturing Company ($2,794.53) and Morehouse & Wells Company ($872.73), and stated that he had made arrangements with the Plymouth Casualty Insurance Company to carry these two items

for a few days until he could finance the building by getting a second mortgage. Crail stated that he had made arrangements with M. S. Clesson to meet the $1,578 bill for the heating plant by trading Clesson a lot in the City of Decatur. This last item of the heating plant to Clesson was a separate contract and was not included in the general contract with Logan.

A lien waiver was prepared by Clyde J. Colwell, assistant secretary of the Corn Belt Building & Loan Association, which said lien waiver contained the names of the various parties having claims against the Crail property as set forth in said affidavits. This lien waiver, together with the Corn Belt Building & Loan Association checks, and the Plymouth Casualty Company checks, which were produced by Crail, were all turned over, by the Corn Belt Building & Loan Association officials and Crail, to Fred J. Pierce, the loan broker. Pierce was also given the new mortgage for $12,500, a release of the old $6,000 mortgage, and the abstract. He was instructed to record the new mortgage and the release of the old mortgage and have them shown on the abstract. He was also instructed to turn over the checks to the various parties named on the lien waiver and to have the parties receiving the checks sign the lien waiver as they got their checks.

A separate lien waiver was prepared for the Clesson heating plant and turned over to Crail, who undertook to get it signed by Clesson, stating that he had an agreement to trade Clesson a lot on the deal.

On December 3, 1929, the day after the meeting at Tuscola, Pierce recorded the new $12,500 mortgage and the release of the old mortgage. He then notified the parties mentioned in the lien waiver to call for their checks. The distribution of the checks extended over a period of a few days and all parties mentioned in the lien waiver signed the same and all received

Corn Belt Building & Loan Association checks upon so signing, except the Decatur Lumber & Manufacturing Company and Morehouse & Wells Company, who received Crail's two Plymouth Casualty Insurance Company checks. In the meantime, while the checks were being paid out, Crail informed Pierce that Clesson had refused to sign a lien waiver for the heating plant and that he, Crail, would send over a check for the amount of that bill. The next day Crail's wife brought to Pierce's office a Plymouth Casualty Insurance Company check for $1,578, payable to the order of M. S. Clesson. This check was delivered by Pierce to Clesson, who thereupon signed a receipt for the heating plant. At the same time Pierce delivered to Clesson Corn Belt Building & Loan Association check for $1,344.50 and Clesson signed the lien waiver, which said check contains the following language:

"Each of the undersigned Lien Creditors of Ed. S. Crail against the property described as (Real Estate in question) in consideration of the payment to him of the amount entered below opposite his printed name, does by his signature hereunder, acknowledge said payment, and releases all right to run a mechanic's lien or other claim against said premises to take prior right to the mortgage lien of Corn Belt Building & Loan Association of Tuscola, Illinois, through its mortgage under date of December 2, 1929."

Subsequently the three Plymouth Casualty Insurance Company checks—the Decatur Lumber & Manufacturing Company check for $2,794.53, Morehouse & Wells Company for $872.73 and M. S. Clesson for $1,578—were all dishonored and the said three parties thereupon filed, in the office of the circuit court of Macon county, claims for mechanic's liens against the Crail property. Nothing has ever been paid on any of these three items.

The facts about the tax claim of the appellee M. W. Iles are very brief. Iles purchased the taxes on the

Crail property in June, 1929, and received the tax certificate. Later on, about November 26, 1929, Crail called at the office of E. A. Patterson, county clerk of Macon county, and presented a check for the payment of the taxes on the premises in question, which had been sold to Iles. The clerk accepted the check and thereupon issued to Crail a certificate of redemption in the usual form. Subsequently, on December 3, 1929, the $12,500 mortgage of the Corn Belt Building & Loan Association was recorded. Thereafter, on December 7, 1929, Crail's check which had been given to the county clerk to redeem said taxes, was dishonored and after receiving the notice of dishonor, on December 7, 1929, the county clerk canceled the memoranda of redemption on the delinquent tax register but dated the cancellation as of December 2, 1929, the day before the Corn Belt Building & Loan Association mortgage was recorded, instead of December 7, 1929, the date on which the cancellation was actually made.

The court below found that all of the parties had liens against the Crail property and entered a decree of foreclosure on the original bill and cross-bill, but found the priorities among the parties as follows: first, M. W. Iles, tax claim; second, Decatur Lumber & Manufacturing Company, Morehouse & Wells Company, M. S. Clesson; third, Corn Belt Building & Loan Association; fourth, various other parties.

Since the decree was entered, the appellant, Corn Belt Building & Loan Association, has purchased the claims of Decatur Lumber & Manufacturing Company and Morehouse & Wells Company, and taken an assignment of the same.

The errors assigned are in substance that the court erred in finding that the equities of the appellee Marion S. Clesson and the appellee M. W. Iles were superior to the equities of the appellant, Corn Belt Building & Loan Association.

As to the claim of appellee Marion S. Clesson for $1,578 for putting in the heating plant, it appears from the proofs that the witness Fred J. Pierce was a loan broker and made the two loans to Crail, the first one for $6,000 and the second one for $12,500 to take up the first $6,000 loan, and in addition to pay Crail's bills to complete the house. Pierce testified that he placed both loans with appellant and that he, Pierce, had full charge of paying off all claims, releasing the first mortgage and recording the second and procuring the waiver of liens. Appellee Clesson had two claims, one for plumbing, amounting to $1,344.50 in the Logan contract, and another for the heating plant, an independent contract, amounting to the sum of $1,578. Pierce was informed as to both of these claims and prepared separate lien waivers for each of them. Appellee Clesson signed the lien waiver for the plumbing bill and Pierce turned over to him the check of the Corn Belt Building & Loan Association for $1,344.50. Pierce also turned over to Clesson the check of the Plymouth Casualty Insurance Company, which had been furnished him by Crail, for the sum of $1,578 to pay the bill for the heating plant and appellee Clesson receipted the bill but did not sign a lien waiver for the amount of that bill. After all of these checks were distributed there remained in the loan fund the sum of $1,209.51, which Pierce turned over to the owner Crail in the check of the Corn Belt Building & Loan Association. The testimony is uncontradicted that Pierce knew and understood that Clesson did not sign a lien waiver of the heating plant claim and congratulated Clesson upon the return of the check of the Plymouth Casualty Insurance Company unpaid, that he had not signed the waiver. Appellant urges that because appellee Clesson signed a lien waiver for the plumbing claim it operated as a waiver of all of appellee's claims. With this we cannot agree, inasmuch as all parties knew just what the

facts were. The claim of appellee Clesson for putting in the heating plant was superior to the lien of the mortgage, has never been paid and no reason is shown why it should not be paid prior to the mortgage.

In this cause the claims of the Decatur Lumber and Manufacturing Company and Morehouse & Wells Company were, by the decree of the circuit court of Macon county, held to be liens against said lands and ordered paid. These claims, it is said in the briefs, have been, since the decree, assigned to appellant. The record shows that these claimants signed a waiver of lien. There are no cross assignments of error in this cause. Neither of the parties in the briefs and arguments discusses the merits of these claims and therefore we make no comment.

As to appellee Iles' claim there is a different situation. When appellant's mortgage was placed of record it appeared that the tax sale had been redeemed and canceled of record. It is held in *Moore v. Wayman,* 107 Ill. 192, and *Gage v. Waterman,* 121 Ill. 115, that the county clerk cannot be compelled to issue a redemption certificate unless he is paid legal money. This rule, however, does not give the clerk the right to change his records in the issuing of certificates to modify the rule of notice when it affects the rights of third parties. The county clerk cannot keep books in the collection of worthless checks by making a public record and then expunging it when he finds the check is bad. A public officer is presumed to perform his duty and his records must always speak the truth. When the clerk issues a redemption certificate and enters it upon his record, so far at least as the rights of third persons are concerned, the clerk is conclusively presumed to have complied with the law and to have been paid with legal money and to have the funds in his hands. In this case the rights of appellant are superior to the rights of appellee Iles and the court erred in finding and decreeing that appellee Iles

had a first lien upon the lands for the amount of said tax sale. As to the equities in this cause, appellee Iles has no standing in this court except as to any equities that the owner, Crail, may have in and to said lands.

For the reasons stated, the decree of the circuit court of Macon county is reversed and the cause remanded with directions to enter a decree in accordance with the views expressed in this opinion.

*Reversed and remanded with directions.*